UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

TRINITY MARINE PRODUCTS, INC.  CIVIL ACTION NO. 6:13-cv-02539

VERSUS  JUDGE TRIMBLE

UNITED STATES OF AMERICA  MAGISTRATE JUDGE HANNA

## REPORT AND RECOMMENDATION

Currently pending before the Court is the United States of America's Rule 12(b)(1) motion to dismiss for lack of jurisdiction, based on the plaintiff's alleged failure to timely submit its administrative claim as required by the Federal Tort Claims Act ("FTCA"). (Rec. Doc. 27). The motion was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. (Rec. Doc. 31). The motion is opposed (Rec. Doc. 36), and oral argument was heard on February 25, 2014. For the following reasons, the undersigned recommends that the motion be granted and that this suit be dismissed.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 14, 1999, Trinity Marine Baton Rouge, Inc. (now known as Trinity Marine Products, Inc.) was indicted along with two co-defendants, Hubert Paul Vidrine, Jr. and Frederick E. McKenzie, for various alleged environmental

crimes arising from the storage and transportation of hazardous waste.[1]  In Count 1 of the indictment, Trinity Marine was charged with knowingly transporting hazardous waste to an unpermitted facility.   In Count 2 of the indictment, Trinity Marine was charged with knowingly transporting hazardous waste without a uniform hazardous waste manifest.   The indictment alleges that Trinity Marine transported hazardous wastes to a Canal Refining Company, Inc. facility in Church Point, Louisiana, and that its criminal co-defendant, Mr. Vidrine, was employed by Canal for more than twenty years, serving as its quality control manager and then as its refinery manager. The indictment further alleges that Trinity Marine's criminal co-defendant, Mr. McKenzie, was the superintendent and manager of Trinity Marine's barge-cleaning operations.

The Government planned to have a witness named Mike Franklin testify that he refused to purchase materials from Trinity Marine because he believed them to be hazardous based on laboratory test results he obtained and that he told both Mr. McKenzie and Mr. Vidrine that the materials being shipped from Trinity Marine's barge cleaning facility were hazardous.[2]   Before the criminal case came to trial,

---

[1]      The criminal action bears Criminal No. 6:99-cr-60053 on the docket of the United States District Court for the Western District of Louisiana.

[2]      Rec. Doc. 135 at 2 in Criminal No. 6:99-cr-60053; Rec. Doc. 151-1 at 9-15 in Criminal No. 6:99-cr-60053..

however, it became obvious that the Government did not have, and never did have, any laboratory test results to back up Mr. Franklin's anticipated testimony that the materials were hazardous.

In January 2001, Trinity Marine and its co-defendants filed two motions in limine, seeking to exclude any reference at trial to the nonexistent test results.[3] Following a hearing held on November 16, 2001, those motions were denied.[4] Trinity Marine and the other defendants also challenged the credibility of Mr. Franklin's anticipated testimony by submitting to the court documents concerning his psychiatric health and alleged illegal drug abuse.[5] Then, in December 2001, Trinity Marine and its co-defendants filed a motion to exclude Mr. Franklin's testimony. In support of that motion, Trinity Marine stated:

> The Government represents that Franklin will testify that (1) he refused to purchase materials from Trinity because he believed they were hazardous and (2) he told McKenzie and Vidrine that the materials being shipped from Trinity's barge cleaning facility in Baton Rouge to Canal were "hot." Franklin's testimony is based entirely upon test results allegedly finding that materials from Trinity were

---

[3]    Rec. Docs. 102 and 110 in Criminal No. 6:99-cr-60053.

[4]    Rec. Doc. 132 in Criminal No. 6:99-cr-60053.

[5]    Rec. Doc. 128 in Criminal No. 6:99-cr-60053.

> hazardous. The Government admits it cannot find those test results. There is no evidence such test results exist.[6]

At the earlier November 2001 hearing, Trinity Marine's counsel had consistently argued that "[t]he government has searched, we have searched. There are no test results. If there were test results, somebody would have turned them up."[7] Oral argument on the motion to exclude Mr. Franklin's testimony was heard during the pretrial conference of January 23, 2002. At that time, counsel for the government suggested that Mr. Franklin's anticipated testimony was so important to its case that "if these conversations do not come in. . . I would say that the Government cannot go forward with its case."[8] The court granted the motion and excluded Mr. Franklin's anticipated testimony.[9] In February 2002, the Government sought to have the ruling reconsidered,[10] but the motion for reconsideration was denied.[11] The Government filed a notice of appeal,[12] then moved for voluntary dismissal of the appeal.[13]

---

[6] Rec. Doc. 135 at 2 in Criminal No. 6:99-cr-60053 (internal citation omitted).

[7] Rec. Doc. 151-1 at 54 in Criminal No. 6:99-cr-60053.

[8] Rec. Doc. 142-1 at 14 in Criminal No. 6:99-cr-60053.

[9] Rec. Doc. 141 in Criminal No. 6:99-cr-60053.

[10] Rec. Doc. 143 in Criminal No. 6:99-cr-60053.

[11] Rec. Docs. 143, 146 in Criminal No. 6:99-cr-60053.

[12] Rec. Doc. 148 in Criminal No. 6:99-cr-60053.

[13] Rec. Doc. 153 in Criminal No. 6:99-cr-60053.

Accordingly, Mr. Franklin's testimony was excluded. At a status conference held on December 4, 2002, however, the Government sought a clarification of the court's ruling concerning the scope of the exclusion[14] but the court declined to alter its previous ruling. On September 17, 2003, the government moved to dismiss the indictment.[15] The motion was granted the next day ending the criminal prosecution.[16]

In 2005, Mr. Vidrine and his wife filed administrative claims under the Federal Tort Claims Act ("FTCA"). On July 23, 2007, the Vidrines filed a lawsuit against the Government, asserting that Mr. Vidrine was maliciously prosecuted and that Mrs. Vidrine had sustained a loss of consortium.[17] After the Vidrines survived two motions for summary judgment brought by the Government, the case went to trial on June 6, 2011 and on September 30, 2011, a verdict was rendered in their favor in the amount of $1,677,000.[18]

The criminal investigation that led to the indictment which was ultimately dismissed by the government was conducted in part by EPA Agent Keith Phillips and

---

[14]      Rec. Doc. 156-1 at 4 in Criminal No. 6:99-cr-60053.

[15]      Rec. Doc. 157 in Criminal No. 6:99-cr-60053.

[16]      Rec. Doc. 158 in Criminal No. 6:99-cr-60053.

[17]      The Vidrines' lawsuit bears Civil Action No. 6:07-cv-01204 on the docket of the United States District Court for the Western District of Louisiana.

[18]      Rec. Doc. 302 in Civil Action No. 6:07-cv-01204.

FBI Agent Ekko Barnhill. During the course of the investigation and criminal prosecution, Phillips and Barnhill engaged in an extramarital affair. At his deposition in the malicious prosecution case on November 25, 2008, Phillips was questioned about his relationship with Barnhill. His answers at that time were false. In March of 2011, Phillips called Barnhill and tried to influence her not to disclose the existence of their past affair. He also allegedly disclosed to her that he had testified that their relationship was only professional and a friendship. When Phillips was confronted with the deposition testimony by his supervisor in March 2011, he provided a false explanation. Phillips' false deposition testimony, his attempts to influence Barnhill and the false explanation given to his supervisor led to Phillips' indictment for perjury and obstruction of justice on July 27, 2011.[19] On October 3, 2011, Phillips pled guilty to both counts.[20]

On July 25, 2012, Trinity Marine submitted an administrative claim under the FTCA[21] for claims that are alleged to be identical to those asserted by the Vidrines.[22]

---

[19]     *United States v. Phillips*, 6:11-cr-0179, Rec. Doc. 1.

[20]     *Id.*, Rec. Doc. 25.

[21]     Rec. Doc. 1 at 5-7; Rec. Doc. 27-2.

[22]     Rec. Doc. 27-2 at 2.

After the administrative claim was denied,[23] Trinity Marine filed the instant lawsuit on August 23, 2013, also alleging malicious prosecution.

Trinity Marine's administrative claim was submitted approximately eight years after the criminal action was dismissed. In the pending motion, the government seeks dismissal of Trinity Marine's complaint on the basis that this Court lacks jurisdiction because the suit is time-barred under the FTCA, arguing that Trinity Marine's administrative claim would have been timely only if brought within two years after the dismissal of the criminal charges in 2003. Trinity Marine contends that its claim did not accrue until July 2011 when the affair between Phillips and Barnhill and the false testimony given by Phillips became known.

## ANALYSIS

The primary issue presented by the pending motion is whether Trinity Marine's claim is time-barred. Dispositive of that issue is the date on which Trinity Marine's claim accrued. If Trinity Marine's claim accrued more than two years before the administrative claim was filed in 2012, a secondary issue is whether Trinity Marine would be entitled to equitable tolling, a remedy that appears to be unavailable if the time limitations imposed in the FTCA are jurisdictional.

---

[23]      Rec. Doc. 1 at 7.

## A.   THE STANDARD FOR ANALYZING A RULE 12(b)(1) CLAIM

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction.  "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim."[24]  The party asserting jurisdiction bears the burden of proof when a Rule 12(b)(1) challenge has been asserted.[25]  In this case, Trinity Marine must bear that burden because it contended, in its complaint, that this court has subject-matter jurisdiction.[26]

There are two types of Rule 12(b)(1) challenges to subject-matter jurisdiction: facial attacks and factual attacks.[27]  When a facial attack is made, the court assumes that the allegations contained in the complaint are true.  "If those allegations sufficiently allege a claim for recovery the complaint stands and the federal court must entertain the suit."[28]  "A factual attack on the subject matter jurisdiction of the

---

[24]    *In re FEMA Trailer Formaldehyde Products Liability Litigation*, 668 F.3d 281, 286 (5th Cir. 2012) (internal quotation marks omitted).

[25]    *Davis v. United States*, 597 F.3d 646, 649 (5th Cir. 2009); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[26]    Rec. Doc. 1 at 4.

[27]    *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

[28]    *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 286 (N.D. Tex. 2012), citing *Paterson v. Weinberger*, 644 F.2d at 523.

court, however, challenges the facts on which jurisdiction depends and matters outside of the pleadings, such as affidavits and testimony, are considered."[29]

In this case, the government's motion presents a factual challenge to the court's subject-matter jurisdiction over this action. When examining a factual challenge to subject-matter jurisdiction that does not implicate the merits of plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case."[30] Accordingly, the court may consider matters outside the pleadings, such as testimony and affidavits.[31] The court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts.[32] "The existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."[33]

---

[29] *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981).

[30] *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214, 223 (5th Cir. 2012) (quotation marks and citations omitted).

[31] *Irwin v. Veterans Administration*, 874 F.2d 1092, 1096 (5th Cir. 1989).

[32] *Davis v. United States*, 597 F.3d at 649-50, citing *Lane v. Halliburton*, 592 F.3d 548, 557 (5th Cir. 2008); *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

[33] *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

In response to a factual challenge, the plaintiff – as the party seeking to invoke jurisdiction – must "submit facts through some evidentiary method and. . . prov[e] by a preponderance of the evidence that the trial court does have subject matter jurisdiction."[34] In this case, this standard requires Trinity Marine to present evidence that its malicious prosecution claim did not accrue until some date less than two years before it submitted its administrative claim.

## B.    FTCA CLAIMS ARE CHRONOLOGICALLY LIMITED

The doctrine of sovereign immunity bars lawsuits against the United States absent a clear and unequivocal waiver by the government of its sovereign immunity.[35] The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq*., is a limited waiver of the United States' sovereign immunity[36] and states that, subject to certain exceptions, "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances. . . ."[37] Thus, the FTCA provides a limited waiver

---

[34]    *Paterson v. Weinberger*, 644 F.2d at 523.

[35]    *Boehms v. Crowell*, 139 F.3d 452, 462-63 (5th Cir. 1998).

[36]    *Johnston v. United States*, 85 F.3d 217, 218–19 (5th Cir. 1996).

[37]    28 U.S.C. § 2674.

of sovereign immunity for the negligent or wrongful acts of governmental employees.[38]

Claims based on the intentional tortious conduct of government employees generally fall outside the scope of the FTCA pursuant to § 2680(h). Under this exception, federal courts lack FTCA jurisdiction over "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights. . . ."[39] The effect of the exception is that sovereign immunity is generally not waived by the government with regard to claims arising out of the intentional tortious conduct of government employees.

However, the statute does not eliminate FTCA jurisdiction for all intentional acts in all circumstances. Section 2680(h) contains "the law enforcement proviso," which waives sovereign immunity "with regard to acts or omissions of investigative or law enforcement officers of the United States Government" for "any claim arising. . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." An "investigative or law enforcement officer" is defined as "any officer of the United States who is empowered by law to execute searches, to

_____

[38] *Insurance Co. of North America v. United States Postal Service*, 675 F.2d 756, 757–758 (5th Cir. 1982); *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994).

[39] 28 U.S.C. § 2680(h).

-11-

seize evidence, or to make arrests for violations of Federal law."[40]  Thus, the law

enforcement proviso waives the sovereign immunity of the United States for claims

of intentional wrongdoing by law enforcement officers while they are engaged in

investigative or law enforcement activities.[41]  In this case, the Government does not

dispute that Agent Phillips was a law enforcement agent and that the United States

would be liable for his acts and omissions that are alleged to constitute malicious

prosecution.

A statute of limitations is incorporated in the FTCA, which states:  "A tort

claim against the United States shall be forever barred unless it is presented in writing

to the appropriate Federal agency within two years after such claim accrues or unless

action is begun within six months after the date of mailing, by certified or registered

mail, of notice of final denial of the claim by the agency to which it was presented."[42]

The Government argues that Trinity Marine failed to meet the requirements of this

statute by submitting its administrative claim more than two years after the claim

accrued.

## C.  WHEN DID TRINITY MARINE'S CLAIM ACCRUE?

---

[40]  28 U.S.C. § 2680(h).

[41]  *Cross v. United States*, 159 Fed. App'x 572, 576 (5th Cir. 2005).

[42]  28 U.S.C. § 2401(b); 28 U.S.C. § 2675(a).

The FTCA's statute of limitations does not define when a claim accrues.[43]  The

"discovery rule" has been developed in the jurisprudence such that an FTCA claim

accrues "when the plaintiff knows or has reason to know of the injury which is the

basis of the action."[44]   An FTCA claimant's awareness of an injury involves two

elements:  "(1) [t]he existence of the injury; and (2) causation, that is, the connection

between the injury and the defendant's actions."[45]   With regard to causation, the

claimant must have knowledge of facts that would lead a reasonable person to either

conclude that there was a causal connection or to seek professional advice, and then,

with that advice, to conclude that there was a causal connection between the

defendant's acts and the claimant's injury.[46]  Furthermore, there is a duty of diligent

inquiry, "which imposes an affirmative duty on the potential plaintiff to proceed with

a reasonable investigation in response to an adverse event."[47]   "Actual knowledge

is not necessary. . . for the limitations period to commence if the circumstances would

---

[43]     *Johnson v. United States*, 460 F.3d 616, 621 (5th Cir. 2006); *Johnston v. United States*, 85 F.3d 217, 219 (5th Cir. 1996).

[44]     *Brown v. Nationsbank Corp.*, 188 F.3d 579, 589-90 (5th Cir.1999), quoting *Moore v. McDonald*, 30 F.3d 616, 620-21 (5th Cir. 1994).

[45]     *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir.1995).  See, also, *Ramming v. United States*, 281 F.3d at 162.

[46]     *Johnson v. United States*, 460 F.3d at 621; *Piotrowski v. City of Houston*, 51 F.3d at 516; *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).

[47]     *Ramming v. United States*, 281 F.3d at 163, quoting *Pacheco v. Rice*, 966 F.2d 904, 907 (5th Cir. 1992).

lead a reasonable person to investigate further."[48]  Thus, an FTCA claim accrues

when the plaintiff has discovered, or in the exercise of reasonable diligence should

have discovered, the fact of the injury and its cause.[49]

The Government argues that the claim accrued at the time of the dismissal of

the criminal charges in 2003.[50]  Trinity Marine argues that it did not know it was

"injured" until it learned about the "fact" of the affair between two investigative

officers which provided Trinity a "reasonable basis" to conclude "that *malicious* 'acts

or omissions by *investigative or law enforcement officers* of the United States

Government' led to an unwarranted prosecution."[51]

Recently, in an unpublished opinion, the Fifth Circuit discussed the sort of

facts necessary to establish accrual in the context of a claim where an individual was

deported based on what was represented to be a removal warrant. In response to the

Government's motion to dismiss for lack of jurisdiction based on untimeliness, the

plaintiffs argued the discovery rule applied to their claim such that it did not accrue

at the time of removal, but at the time they received a response to a request under the

---

[48]     *Adrian v. Selbe*, 364 Fed. App'x 934, 937 (5th Cir. 2010) (internal quotation marks omitted), quoting *Piotrowski v. City of Houston*, 51 F.3d at 516.

[49]     *Young v. United States*, 727 F.3d 444, 447 (5th Cir. 2013).

[50]     Rec. Doc. 28 at 12.

[51]     Rec. Doc. 34 at 23. (Emphasis in original).

Freedom of Information Act indicating there never was a removal order. The court explained:

> The Supreme Court provided guidance on the discovery rule in *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). In *Kubrick*, the Supreme Court rejected the argument that a claim does not accrue until the plaintiff learns or forms a reasonable opinion that he has been wronged. 444 U.S. at 118, 100 S.Ct. at 358. The Court stated that where the plaintiff discovered the fact of his injury or its cause sometime after the injury took place, he benefits from a later accrual date; but where he merely learned of his legal rights sometime after his injury, he does not receive that benefit. *Id*. at 118–22, 100 S.Ct. at 357–59 .

.    .    .

> The Ortegas argue that their claims could not have accrued until May 15, 2009, at the earliest because that is when they learned, through the Government's FOIA response, that Mr. Ortega's removal was conducted without a valid removal order. We disagree. This was not the case of a latent injury. See *DuBose*, 729 F.2d at 1029. The Ortegas knew that they had suffered injuries immediately after Mr. Ortega's arrest and deportation on May 28, 2008, and they knew that those injuries were caused by federal agents. These constitute the sort of facts that we consider "the critical facts of [a plaintiff's] injury and its cause," which establish accrual. *Id*. at 1030. In contrast, the facts that the Ortegas learned through the Government's FOIA response in May 2009 go to when the Ortegas overcame "ignorance of [their] legal rights," which are the sort of facts that do not establish accrual. *Kubrick*, 444 U.S. at 122, 100 S.Ct. at 359.

> On appeal, the Ortegas are careful not to aver that they merely learned at a later date that they had a cause of action. Instead, they argue that they did not discover that there was any injury at all until they learned that there had been no removal order against Mr. Ortega. In other words, the Ortegas attempt to define their "injury" by the unlawfulness of Mr. Ortega's deportation, rather than by the deportation per se. However, to define a tortious injury by the unlawfulness of the tortious act causing

the injury is circular. For the reasons given above, the discovery rule is inapposite here.[52]

While this Court finds the *Ortega* decision is persuasive, the applicable substantive law also affects the impact, or lack thereof, of the discovery rule in this case. In a case brought under the FTCA, such as this one, the court must apply the law of the state in which the acts complained of occurred to determine the Government's liability for torts within the FTCA waiver of immunity.[53]   Therefore, in this case, Louisiana's law on malicious prosecution must be applied.

The elements necessary to support a claim for malicious prosecution under Louisiana law are: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the current defendant against the plaintiff in the current case who was the defendant in the original proceeding; (3) the bona fide termination of the earlier proceeding in favor of the present plaintiff; (4) the absence of probable cause for the earlier proceeding; (5) the presence of malice in the earlier prosecution; and (6) damage conforming to legal standards resulting to the

_____

[52]      *Ortega v. United States*, ___ Fed. App'x ___, No. 12-50629, 2013 WL 5977788, at *2 -3 (5th Cir. Apr. 16, 2013).

[53]      *Cleveland ex rel. Cleveland v. United States*, 457 F.3d 397, 403 (5th Cir. 2006); *Brown v. Nationsbank Corp.*, 188 F.3d 579, 586 (5th Cir. 1999).  See, also, 28 U.S.C. §§ 1346(b), 2674.

current plaintiff.[54]  Under Louisiana jurisprudence, a lack of probable cause and malice are *presumed* when criminal charges against an individual are dismissed prior to trial, and the burden is placed on the defendant to prove that he acted with probable cause and without malice.[55]

In this case, Trinity Marine argues that its claim for malicious prosecution did not accrue until it knew that Agent Phillips had acted with actual malice by misleading and deceiving the federal prosecutors and perjuring himself by giving false deposition testimony in the *Vidrine* lawsuit.[56]  Since both malice and a lack of probable cause are presumed under Louisiana law when a criminal charge is dismissed prior to trial, Trinity Marine needed to know nothing other than what it already knew on the day that the criminal charges were dismissed.  On that date, Trinity Marine knew:  (a) there was a prior criminal proceeding; (b) the criminal proceeding was instigated by the federal government with the investigative assistance of Agent Phillips, (c) the Government voluntarily dismissed the indictment, and (d)

---

[54]      *Kennedy v. Sheriff of East Baton Rouge*, 2005-1418 (La. 07/10/06), 935 So.2d 669, 690 n. 20; *Miller v. East Baton Rouge Parish Sheriff's Dept.*, 511 So.2d 446, 452 (La. 1987); *Jones v. Soileau*, 448 So.2d at 1271.

[55]      *Vidrine v. United States*, No. 6:07-CV-1204, 2012 WL 253124, at *5 (W.D. La. Jan. 6, 2012); *Zerbe v. Town of Carencro*, 2004-422 (La. App. 3 Cir. 10/06/04), 884 So.2d 1224,1231, *writ denied*, 2004-2719 (La. 01/14/05), 889 So.2d 270, *writ denied*, 2004-2735 (La. 01/14/05), 889 So.2D 271.  See, also, *Miller v. East Baton Rouge Parish Sheriff's Dept.*, 511 So.2d at 453 ("Malice may be inferred from the lack of probable cause. . . .").

[56]      Rec. Doc. 34 at 8.

the criminal prosecution had injured Trinity Marine because it had incurred attorneys' fees and other costs necessary to defend itself in the criminal case. Since the Government did not take the case to trial, the lack of probable cause was presumed and malice was inferred. Therefore, all of the elements necessary to bring a malicious prosecution action were satisfied at that time.

At a minimum, this knowledge alone should have been enough for Trinity Marine to seek professional advice as to the possible connection between the Government's acts and its injuries.[57] However, as set forth above, the record reflects Trinity Marine had far more factual knowledge than these basic elements and Trinity Marine has presented no evidence to show that it took any action after the dismissal of the criminal case in 2003 to investigate why it was indicted or why the criminal charges were dropped.

Contrary to Trinity Marine's actions, or lack thereof, in July 2005, less than two years after the underlying criminal matter was dismissed, Mr. Vidrine filed a motion in the criminal suit, seeking access to the transcripts of the Grand Jury proceeding that led to the criminal indictments.[58] Mr. Vidrine alleged that "based

---

[57]     *Adrian v. Selbe*, No. 06-455, 2009 WL 960091, at *5 (W.D. La. Apr. 8, 2009) ("At a minimum, it appears that this knowledge should have been enough for a reasonable person to seek professional advice as to the possible connection between [the defendant's] acts and the plaintiffs' injuries.").

[58]     Rec. Doc. 159 in Criminal No. 6:99-cr-60053.

upon information that the government's witness, Michael Franklin and EPA Agents presented testimony and presentations before the Grand Jury and while doing so made and submitted false testimony knowingly before the Grand Jury in furtherance to obtain and [sic] Indictment in the original criminal case against Trinity Marine. . . and Vidrine. These egregious acts were vindictive, malicious, and promulgated information that culminated in prosecutorial misconduct before the Grand Jury based on EPA Agents/CID and or EPA Counsel's contribution to making and submitting false reports presented to the Office of the United States Attorney."[59]   Although Vidrine's motion was denied, he nonetheless timely filed his administrative claim in September of 2005.[60]

Trinity Marine contends that when the Vidrines filed their malicious prosecution suit in 2007, it remained unaware of any facts concerning the acts, omissions, or motives of the investigative or law enforcement officers sufficient to support a malicious prosecution action.[61]   Review of the complaint filed by the Vidrines demonstrates the opposite. In the original  complaint, it is alleged that Mr. Vidrine was maliciously prosecuted in the criminal matter "at the suggestion and

---

[59]     Rec. Doc. 159 at 5 in Criminal No. 6:99-cr-60053.

[60]     Rec. Docs. 166, 172 in Criminal No. 6:99-cr-60053.

[61]     Rec. Doc. 34 at 15.

instigation of special agents of the Criminal Investigative Division of the United States Environmental Protection Agency. . . including. . . Keith Phillips."[62]  The Vidrines further alleged that "the government agents' only 'evidence' consisted of the uncorroborated, unsubstantiated, and fabricated statements of an 'informant' named Mike Franklin" and that the "government never obtained any actual hazardous waste sample or test results substantiating the criminal charges that they filed."[63]

They expressly alleged that "the malicious conduct and false statements and allegations of the EPA. . . and/or. . . FBI agents, may have been pursued by [government] attorneys. . . . who knew of the baseless nature of the allegations."[64] The Vidrines also alleged that "fabricated allegations of misconduct by Mr. Vidrine,"[65] had been asserted, that "[t]he government never possessed any tangible evidence that. . . Vidrine. . . accepted any. . . 'hazardous waste,'"[66] and that "neither the EPA nor the U.S. Department of Justice ever possessed any. . . test results showing that Trinity. . . had ever supplied" hazardous waste to Vidrine.[67]

---

[62]    Rec. Doc. 1 at 2, Civil Action No. 6:07-cv-01204.

[63]    Rec. Doc. 1 at 2, Civil Action No. 6:07-cv-01204.

[64]    Rec. Doc. 1 at 2 in Civil Action No. 07-cv-1204.

[65]    Rec. Doc. 1 at 3 in Civil Action No. 07-cv-1204.

[66]    Rec. Doc. 1 at 5 in Civil Action No. 07-cv-1204.

[67]    Rec. Doc. 1 at 5 in Civil Action No. 07-cv-1204.

Trinity Marine argued in a post-hearing brief that the false statements of Phillips to the Grand Jury were not known until 2011. This argument is unavailing as the Government obtained the Grand Jury transcripts in December, 2007.[68] In Vidrine's amended complaint filed on July 29, 2009, which is a public record, the unsealed Grand Jury testimony is referred to over 60 times, even directly quoting the false testimony of Phillips.[69] The Government argues since the *Vidrine* suit was a matter of public record, Trinity Marine should be charged with knowledge of that suit and its factual allegations.[70] The Government provided no Fifth Circuit authority on that point, however, a reasonably diligent inquiry, which Trinity Marine was obligated to undertake, would have led to the same information held by the Vidrines more than two years before Trinity Marine filed its administrative claim.

Trinity Marine alleged in its complaint, that it "may never have learned of these [Agent Phillips's] deceptions but for an entirely chance occurrence in July 2011"[71] and represented in its briefing on the pending motion that it discovered its cause of action through "entirely fortuitous circumstances."[72] Aside from the fact that, per

---

[68]     Rec. Doc. 44-1.

[69]     Rec. Docs. 44, p. 2; 40-2, p. 23.

[70]     Rec. Doc. 28 at 17.

[71]     Rec. Doc. 1 at 55.

[72]     Rec. Doc. 34 at 8.

*Kubrick* and *Ortega* knowledge of the legal claim is not what is required for the claim to accrue, this is evidence that Trinity Marine did not diligently pursue its remedies and did not investigate whether it might have a malicious prosecution claim between 2003 and 2011, even though the charges against it were dismissed prior to trial.

Trinity Marine contends that "not even the United States learned they had been misled and deceived by Agents Phillips and Barnhill until 2011, as a result of an internal investigation of Agent Phillips, prompted by concern he perjured himself by giving false deposition testimony in the Vidrine lawsuit."[73] Trinity Marine further contends that "through concealment, then outright perjury, the United States' 'investigative or law enforcement officers' covered up [the fact that] there was neither probable cause nor a non-malicious basis for the United States to prosecute Plaintiff Trinity Marine. . . in a previous matter."[74] Trinity Marine further states that "[o]nly upon revelation of Phillips' affair and false Grand Jury testimony could Trinity reasonably believe the United Stated maliciously prosecuted Trinity."[75] Thus, Trinity Marine's argument is that, until July 2011, it lacked the facts to show a lack of probable cause or malice on the part of the investigating officers.[76]

---

[73]     Rec. Doc. 34 at 8.

[74]     Rec. Doc. 34 at 5.

[75]     Rec. Doc. 43-1 at 4.

[76]     Rec. Doc. 34 at 16.

Trinity Marine overlooks the fact that it did not require proof of malice on the part of the law enforcement officers or proof that the officers lacked probable cause for the investigation and prosecution of the criminal charges in order to assert a malicious prosecution claim. Under Louisiana law, the dismissal of the criminal indictment permitted a presumption that there was no probable cause and an inference that there was malice. As a result, the burden shifted and was not on Trinity Marine to establish a lack of probable cause or malice.[77] Therefore, Trinity Marine was not required to wait until it had proof of malice to submit its administrative claim.

Finally, this Court cannot fathom that Trinity Marine did not share Mr. Vidrine's suspicion that false testimony had been presented to the Grand Jury since the information that allowed the Vidrines to timely assert their claim was equally available to Trinity Marine. This is especially true since a review of the briefs filed in the criminal matter and the transcripts of the hearings held in that matter reveals that Trinity Marine's counsel took the lead in both drafting submissions to the court and in arguing before the court.

---

[77] *Vidrine v. United States*, 2012 WL at *6; *Zerbe v. Town of Carencro*, 884 So.2d at 1231.

The dismissal of the criminal proceeding before trial together with Trinity Marine's knowledge of injury[78] was likely sufficient to start the two-year clock ticking in 2003 as Trinity Marine had sufficient factual information available to it to at least investigate whether it had been maliciously prosecuted. However, this Court need only find that the claim accrued more than two years before the administrative claim was filed. Trinity Marine has not carried its burden of showing that its malicious prosecution claim accrued less than two years before its administrative claim was filed, and therefore, the claim should be dismissed.

## B.    IS THE FTCA'S LIMITATIONS PERIOD JURISDICTIONAL?

The Government argues that the limitations period established in the FTCA is jurisdictional, depriving this Court of authority to decide the issues presented in Trinity Marine's complaint. Trinity Marine argued at oral argument – but did not address in any of its extensive briefing – that the two-year deadline is not jurisdictional and is, therefore, subject to equitable tolling.

Fifth Circuit authority can be located for both propositions. In *Perez v. United States*, 167 F.3d 913, 917 (5th Cir. 1999), the case relied upon by Trinity Marine, the court said: "where the principles of equitable tolling would ordinarily apply, such

----

[78]     At a minimum, Trinity Marine was injured by the underlying criminal prosecution because it incurred attorneys' fees and expenses in defending against the criminal charges.

tolling should be allowed in an FTCA case." Earlier, however, the court had stated that "[i]t is well-settled that these limitations periods [under the FTCA] are jurisdictional."[79] Two years after *Perez* was decided, the Fifth Circuit again stated that "[l]imitations periods in statutes waiving sovereign immunity are jurisdictional, and a court exercising its equitable authority may not expand its jurisdiction beyond the limits established by Congress."[80] More recently, the Fifth Circuit again stated that "[t]he FTCA's statute of limitations is jurisdictional, and a claimant is required to meet both filing deadlines."[81] Although one Fifth Circuit decision from 2006 concluded that whether the FTCA's limitations period is jurisdictional "appears to be undecided by this court,"[82] many other cases decisions rendered by the Fifth Circuit since *Perez* have also concluded that the FTCA's limitations provision is jurisdictional.[83] The undersigned therefore finds that the weight of the jurisprudence concludes that the statute of limitations set forth in the FTCA is jurisdictional.

---

[79]     *Flory v. United States*, 138 F.3d 157, 159 (5th Cir. 1998).

[80]     *Ramming v. United States*, 281 F.3d at 165.

[81]     *In re FEMA Trailer Formaldehyde Products Liability Litigation*, 646 F.3d at 189.

[82]     *Johnson v. United States*, 460 F.3d at 619.

[83]     See, also, *Young v. United States*, 727 F.3d at 447; *Farmer v. United States*, 539 Fed. App'x 584, 585 (5th Cir. 2013); *Beard v. Bureau of Prisons*, 538 Fed. App'x 493, 494 (5th Cir. 2013); *Dupree v. United States*, 495 Fed. App'x 422, 425 (5th Cir. 2012); *Adrian v. Selbe*, 364 Fed. App'x at 936; *In re Katrina Canal Breaches Litigation*, 345 Fed. App'x 1, 5 (5th Cir. 2009); *Waggoner v. United States*, 95 Fed. App'x 69, 71 (5th Cir. 2004); *Daniels v. U.S., Dept. of Veterans Affairs*, 190 F.3d 537, at *3 (5th Cir. 1999).

-25-

Because it is jurisdictional, it is not subject to extension by means of equitable tolling.[84]

The undersigned further finds that, even if the relevant statute of limitations was not jurisdictional and equitable tolling was available, this is not a case in which the limitations period could be extended by means of equitable tolling.

The United States Supreme Court has explained that equitable tolling should be used sparingly,[85] and the Fifth Circuit has stated that equitable tolling should be applied only in rare cases.[86] The party invoking equitable tolling bears the burden of demonstrating that it applies.[87] Therefore, Trinity Marine must bear the burden of demonstrating that this is a rare case justifying the use of equitable tolling.

As the *Perez* court noted, equitable tolling is available when "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his

---

[84]   *Perez v. United States*, 167 F.3d at 915.

[85]   *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)

[86]   *Barrs v. Sullivan*, 906 F.2d 120, 122 (5th Cir. 1990).

[87]   *Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002); *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002); *Conaway v. Control Data Corp.*, 955 F.2d 358, 362 (5th Cir. 1992).

adversary's misconduct into allowing the filing deadline to pass."[88]  In other words,

a claimant may be entitled to equitable tolling of a filing deadline if he lacked

awareness of the facts supporting his claims because of the defendant's intentional

concealment of those facts.[89]

Trinity Marine contends that the applicable statute of limitations should be

delayed through equitable tolling because it did not learn until 2011 that Agent

Phillips and Agent Barnhill were having an affair during the time that they were

investigating the criminal case against Trinity Marine and Mr. Vidrine.  There are two

flaws in this argument.

First, equitable tolling is not intended for those who sleep on their rights,[90] and

there is no evidence that Trinity Marine did anything between the date that the

indictment was dismissed and the date this suit was filed that might be perceived as

diligent pursuit of its legal remedies.  As explained previously, Mr. Vidrine took

---

[88]     *Perez v. United States*, 167 F.3d at 915, quoting *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990).  See, also, *Crostley v. Lamar County, Texas*, 717 F.3d 410, 421-22 (5th Cir. 2013); *Manning v. Chevron Chemical Co., LLC*, 332 F.3d 874, 880 (5th Cir. 2003) ("We have identified three potential bases for equitable tolling:  (1) the pendency of a suit between the same parties in the wrong forum; (2) the plaintiff's lack of awareness of the facts supporting his claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about his rights."; *Wilson v. Dept. of Veterans Affairs*, 65 F.3d 402, 404–05 (5th Cir. 1995).

[89]     *Manning v. Chevron Chemical Co., LLC*, 332 F.3d at 880.

[90]     *Tsolainos v. Cain*, 540 Fed. App'x. 394, 398 (5th Cir. 2013); *Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010).

timely action by filing a motion in the criminal suit seeking access to the transcripts of the Grand Jury proceeding that led to the criminal indictments. The Vidrines then filed a timely administrative claim and a timely lawsuit. Trinity Marine does not allege that it did anything to preserve its rights and only learned that it might have a claim when an employee fortuitously read a blog posting in 2011. Trinity Marine's failure to take any action between the dismissal of the criminal prosecution and the reading of the blog eight years later cannot be viewed as the due diligence required to support equitable tolling, especially when its inaction is compared with the actions taken by Mr. Vidrine, Trinity Marine's criminal co-defendant. The undersigned finds that Trinity Marine has not carried its burden of showing that it acted with due diligence sufficient to preserve its malicious prosecution claim beyond the two-year deadline set forth in the FTCA.

Second, Trinity Marine has not carried its burden of showing that it was induced or tricked by the Government into allowing the filing deadline to pass. Trinity Marine argues that Agent Phillips's continued cover up of his affair with Agent Barnhill precluded discovery of his false statements to the Grand Jury. However, as explained previously, Trinity Marine knew enough facts, at the time the criminal charges were dismissed, to excite inquiry and to warrant further investigation. Even without proof of the affair, Trinity Marine should have

investigated the basis for the indictment and, more particularly, why the government had no test results to support Mr. Franklin's anticipated testimony. Such an investigation might have led to the discovery of Agent Phillips's false testimony before the Grand Jury. Mr. Vidrine was successful in his malicious prosecution case because he undertook a timely investigation that led to the release of the Grand Jury transcripts and other evidence. Trinity Marine and Mr. Vidrine had knowledge of the same facts at the conclusion of the criminal prosecution, and Trinity Marine has not shown that the government prevented it from investigating further at the conclusion of the criminal case.

In summary, if equitable tolling was available to Trinity Marine, it could not be used in this case to extend the FTCA's two-year limitations period. Trinity Marine has not shown that it diligently pursued its remedies or that the government prevented it from asserting a timely claim.

## CONCLUSION

The undersigned finds that Trinity Marine is not entitled to equitable tolling of the applicable statute of limitations, that Trinity Marine's malicious prosecution claim accrued more than two years before Trinity Marine's administrative claim was filed, and therefore finds that this Court lacks subject-matter jurisdiction over Trinity

Marine's complaint. For that reason, the undersigned recommends that the government's motion to dismiss (Rec. Doc. 27) should be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, on March 17, 2014.

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE