UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| TRINITY MARINE PRODUCTS, INC. | CIVIL ACTION NO. 6:13-cv-02539 |
| VERSUS | JUDGE TRIMBLE |
| UNITED STATES OF AMERICA | MAGISTRATE JUDGE HANNA |

### SUPPLEMENTAL REPORT AND RECOMMENDATION

The undersigned previously issued a report and recommendation in this matter (Rec. Doc. 47) with regard to the United States of America's Rule 12(b)(1) motion to dismiss for lack of jurisdiction, based on the plaintiff's alleged failure to timely submit its administrative claim as required by the Federal Tort Claims Act ("FTCA") (Rec. Doc. 27).  For the reasons explained there, the undersigned recommended that the motion be granted.  Plaintiff Trinity Marine Products, Inc. objected.  (Rec. Doc. 48).  The district court ordered the undersigned to supplement the report and recommendation by addressing Trinity's arguments with respect to judicial estoppel and its arguments concerning whether Louisiana law or federal law determines when Trinity's claim accrued.  (Rec. Doc. 53).

### FACTUAL AND PROCEDURAL BACKGROUND

An explanation of the facts underlying this lawsuit and the suit's procedural posture is set forth in the original report and recommendation.  (Rec. Doc. 47).

## ANALYSIS

### I. DOES STATE LAW OR FEDERAL LAW DETERMINE WHEN TRINITY'S CLAIM ACCRUED?

Trinity objected to the original report and recommendation, arguing that its claim did not accrue until July 2011 when it was revealed "that EPA Agent Keith Philips and FBI Agent Ekko Barnhill had been engaged in a clandestine extra-marital affair when they recommended, then perpetuated[,] the criminal prosecution." (Rec. Doc. 48 at 13). Trinity's argument is that, until there was evidence of the affair, there was no evidence that the criminal prosecution of Trinity was anything other than a legitimate one but that, upon learning of the affair, it became apparent to Trinity that the motivation for the prosecution was to create opportunities for Agent Phillips and Agent Barnhill to be together, thus establishing that the criminal prosecution was the product of intentional misconduct on the part of Agent Phillips. Trinity thus argues that, until it knew about the affair, it had no knowledge of any facts supporting the contention that the prosecution was based on intentional misconduct or malice. This argument confuses the elements that must be established in order to bring a state-law malicious prosecution claim with the elements that must be established to show that an FTCA claim based upon state-law principles of malicious prosecution has accrued.

As noted in the original report and recommendation, substantive state law determines whether a cause of action exists that can be brought under the FTCA, while federal law determines when such a claim accrues.[1] In other words, "[i]f the plaintiff has a cause of action against the Government under state law, federal law then controls as to whether the plaintiff has timely instituted his suit to recover on that cause of action."[2] Two separate and distinct questions must be asked: (1) did Trinity have a malicious prosecution claim against the Government under Louisiana law, and, if so, (2) when did that claim accrue under federal law.

As explained in the original report and recommendation, the elements necessary to support a claim for malicious prosecution under Louisiana law are: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the current defendant against the plaintiff in the current case who was the defendant in the original proceeding; (3) the bona fide termination of the earlier proceeding in favor of the present plaintiff; (4) the absence of probable cause for the earlier proceeding; (5) the presence of malice in the earlier prosecution; and

---

[1] *Johnston v. United States*, 85 F.3d 217, 219 (5th Cir. 1996); *Waggoner v. United States*, 95 F. App'x 69, 71 (5th Cir. 2004).

[2] *Quinton v. United States*, 304 F.2d 234, 239-40 (5th Cir. 1962).

(6) damage conforming to legal standards resulting to the current plaintiff.[3] Under Louisiana jurisprudence, a lack of probable cause is presumed when criminal charges are dismissed prior to trial, malice is inferred from the lack of probable cause, and the burden is then placed on the defendant to prove that he acted with probable cause and without malice.[4]

Each of the six elements was satisfied – and a malicious prosecution claim therefore existed – at the time that the federal criminal prosecution terminated in September 2003. At that time, Trinity knew (1) that there had been a criminal proceeding against it; (2) that the federal government had caused the criminal prosecution to be brought; (3) that the criminal matter had terminated in favor of Trinity;[5] and (6) that Trinity had been damaged by the prosecution at least to the

---

[3] *Kennedy v. Sheriff of East Baton Rouge*, 2005-1418 (La. 07/10/06), 935 So.2d 669, 690 n. 20; *Miller v. East Baton Rouge Parish Sheriff's Dept.*, 511 So.2d 446, 452 (La. 1987); *Jones v. Soileau*, 448 So.2d at 1271.

[4] *Vidrine v. United States*, No. 6:07-CV-1204, 2012 WL 253124, at *5 (W.D. La. Jan. 6, 2012); *Zerbe v. Town of Carencro*, 2004-422 (La. App. 3 Cir. 10/06/04), 884 So.2d 1224,1231, *writ denied*, 2004-2719 (La. 01/14/05), 889 So.2d 270, *writ denied*, 2004-2735 (La. 01/14/05), 889 So.2D 271. See, also, *Robinson v. Goudchaux's*, 307 So. 2d 287, 290 (La. 1975) ("where there is a want of probable cause. . . malice will be inferred.); *Miller v. East Baton Rouge Parish Sheriff's Dept.*, 511 So.2d at 453 ("Malice may be inferred from the lack of probable cause. . . ."). "Damages are also to be presumed in a case where all other elements of a suit for malicious prosecution are satisfied." *Robinson v. Goudchaux's*, 307 So. 2d 287, 290 (La. 1975).

[5] Judge Melancon's comment that the criminal proceeding was dismissed based on evidentiary rulings is immaterial. Louisiana law does not require a finding at the time of dismissal of a legal proceeding that it was based on improper motives in order to support a subsequent malicious prosecution claim. All that is required is that the earlier proceeding terminated in favor of the former defendant / prospective plaintiff. See authority cited in Footnote 3, above.

extent that it had incurred attorneys' fees and costs to defend itself in that action. It was not necessary for Trinity to be aware of facts establishing the fourth and fifth elements of the claim at that time because the absence of probable cause for the earlier proceeding was presumed, and the presence of malice was inferred from the absence of probable cause.

But did the claim accrue at that same time or at some later date, as Trinity argues? The relevant legal principles were set forth in the original report and recommendation. Under the FTCA, a two-year statute of limitations runs from the date on which the claimant's cause of action accrues.[6] Because the statute does not state when a claim accrues,[7] a jurisprudential rule developed. Under that rule, an FTCA claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action."[8] An FTCA claimant's awareness of an injury involves two elements: the existence of the injury and causation.[9] Causation is established when the claimant has knowledge of facts that would lead a reasonable

---

[6] 28 U.S.C. § 2401(b).

[7] *Johnson v. United States*, 460 F.3d 616, 621 (5th Cir. 2006); *Johnston v. United States*, 85 F.3d at 219.

[8] *Brown v. Nationsbank Corp.*, 188 F.3d 579, 589-90 (5th Cir.1999), quoting *Moore v. McDonald*, 30 F.3d 616, 620-21 (5th Cir. 1994).

[9] *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir.1995). See, also, *Ramming v. United States*, 281 F.3d 158, 162 (5th Cir. 2001).

person to either conclude that there is a causal connection between his injuries and the prospective defendant's actions or to seek professional advice, and then, with that advice, to conclude that there is a causal connection between the prospective defendant's acts and the claimant's injury.[10] Additionally, a duty of diligent inquiry imposes an affirmative duty on the claimant to proceed with a reasonable investigation in response to an adverse event.[11] Therefore, actual knowledge is not necessary for the limitations period to start if the circumstances would lead a reasonable person to investigate further.[12] To reiterate, an FTCA claim accrues when the claimant has discovered, or in the exercise of reasonable diligence should have discovered, the fact of the injury and its cause.[13] Consistently, accrual is delayed when a plaintiff discovers the fact of his injury or its cause after the injury occurs.[14]

Trinity argues that its claim did not accrue until it knew that the criminal prosecution was the result of intentional misconduct or malice on the part of Agent

---

[10] *Johnson v. United States*, 460 F.3d at 621; *Piotrowski v. City of Houston*, 51 F.3d at 516; *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).

[11] *Ramming v. United States*, 281 F.3d at 163, quoting *Pacheco v. Rice*, 966 F.2d 904, 907 (5th Cir. 1992).

[12] *Adrian v. Selbe*, 364 Fed. App'x 934, 937 (5th Cir. 2010) (internal quotation marks omitted), quoting *Piotrowski v. City of Houston*, 51 F.3d at 516.

[13] *Young v. United States*, 727 F.3d 444, 447 (5th Cir. 2013).

[14] *Ortega v. United States*, 547 Fed. App'x 384, 387 (5th Cir. 2013).

Phillips.  Stated another way, Trinity argues that it did not know it had been injured until it knew of Agent Phillips's misconduct.  There are two reasons why this argument lacks merit.  First, knowing that an injury occurred does not depend on knowing that the injury was intentionally or maliciously caused.  Second, nothing in the accrual standard requires knowledge of facts supporting the elements of the state-law cause of action.

Trinity contends that a significant part of its claimed damages are the costs it incurred in defending against the federal criminal charges.  In its complaint, Trinity alleges that it sustained a $4,421,459.79 monetary injury and loss of property due to the Government's prosecution of the criminal charges.  (Rec. Doc. 1 at 4).  In its claim letter, Trinity explained that its damages include "the costs incurred in defending the underlying malicious criminal prosecution, damages to goodwill and reputation, and property damage associated with its loss of business and business opportunity." (Rec. Doc. 1-2 at 5).  A supplemental letter (Rec. Doc. 1-12) itemizes its losses as including $120,000 paid to settle the claims against Trinity employee Frederick McKenzie; $825,554.27 paid to Locke Liddell & Sapp, LLP for legal services; $98,275.29 paid to attorney Jim Boren; $89,544.24 paid to a defense expert; $42,760.02 paid to attorney Frank W. Dawkins; and $107,293.64 paid to attorney C. Michael Hill.  Therefore, over a million dollars of Trinity's claimed damages is

comprised of attorneys' fees and defense costs, all of which were incurred before the criminal prosecution ended. Consequently, Trinity knew, not later than September 2003, that it had been injured by the criminal prosecution. Trinity did not have to know that Agent Phillips had an affair with Agent Barnhill in order to know that it had been injured.

Furthermore, accrual of an FTCA claim is not premised upon knowledge of facts establishing either malice or intentional misconduct. Although malice is an element of the state-law malicious prosecution claim – but not an element that must be established to show that a claim has accrued – there is no necessity for an FTCA claimant to show intention or malice before the court can find accrual; malice must be shown only in order to find that a state-law malicious prosecution cause of action exists. In this case, moreover, Louisiana law permits malice to be inferred from a lack of probable cause that is presumed when criminal charges are dismissed prior to trial. Therefore, accrual of an FTCA claim is not grounded upon the claimant's demonstration that it was aware of facts establishing that the prior lawsuit was based on actual malice or intentional misconduct.

Trinity argues that accrual requires knowledge of actual facts rather than intuitions, suspicion, conjecture, or speculation. (Rec. Doc. 48 at 10). Trinity argues that a prospective FTCA plaintiff who might have a malicious prosecution claim must

be aware of facts supporting a valid conclusion that the prior lawsuit was based on malice (or intentional misconduct) before his claim can be found to have accrued. That is an inaccurate reading of the relevant jurisprudence. The accrual standard requires a prospective FTCA plaintiff to have a reasonable factual basis for two things only: his injury and its cause.[15] When the criminal prosecution of Trinity ended in September 2003, Trinity knew it had been injured by having to finance a defense against criminal charges, and Trinity knew that the injury was caused by the Government and its employees who investigated and prosecuted the charges that were brought against Trinity. Had Trinity investigated at that point, which it had a duty to do, the investigation would likely have led to the same information that formed the basis of the malicious prosecution lawsuit filed by Trinity's co-defendant in the criminal prosecution, Hubert Vidrine, which was ultimately successful. A further opportunity to investigate or assert a claim occurred when the Vidrine suit was filed and allegations that Trinity claims are identical to its own were asserted.

Trinity also argues that there is no injury resulting from the conduct of a civil or criminal lawsuit unless there also is a reasonable factual basis on which to conclude that the prior prosecution was motivated by malice. (Rec. Doc. 48 at 12-13). This confuses the requirements for the state-law malicious prosecution cause of

---

[15] *Harrison v. United States*, 708 F.2d at 1027.

action with the requirements for federal-law accrual of an FTCA claim and, if accepted, would eradicate Louisiana's longstanding presumption of a lack of probable cause and inference of malice when criminal charges are dismissed prior to trial, an absurd result that should not be permitted.

Trinity suggests that the undersigned's reliance on *Ortega v. United States* for illustration of this concept is misplaced. To the contrary, *Ortega* provides sound guidance. There, Mr. Ortega was arrested and deported in May 2008. In May 2009, his wife received the government's response to a Freedom of Information Act inquiry that revealed that the government did not have a valid deportation order. Within two years of acquiring that information, the Ortegas filed an FTCA claim, which was denied. They then filed suit. They argued that their claim did not accrue until they received the information in May 2009 showing that Mr. Ortega was removed from the country without a valid removal order. The court disagreed, stating that "[t]he Ortegas knew that they had suffered injuries immediately after Mr. Ortega's arrest and deportation on May 28, 2008, and they knew that those injuries were caused by federal agents. These constitute the sort of facts that we consider the critical facts of [a plaintiff's] injury and its cause, which establish accrual."[16] Their claim accrued at the time of the deportation because the deportation was the injury, and the Ortegas

---

[16] *Ortega v. United States*, 547 Fed. App'x 3 at 387 (internal quotation marks omitted).

did not need to know that the deportation was wrongful or malicious or intentional in order to trigger accrual of their claim, they only needed to know that they were injured and who caused the injury.  Here, Trinity claims that its injury is the cost of defending the criminal prosecution, and it knew as early as the date on which the criminal charges were dismissed that it was injured and the injury was caused by the Government.  Therefore, Trinity should have initiated or further investigated its claim much earlier than it did.

Trinity attempts to analogize this case to some in which accrual was delayed due to the lack of a connecting link between injury and causation.  But the facts of this case cannot readily be analogized to a situation such as that presented in cases where the injured party knows that she has a medical condition but does not have any evidence that the condition is the result of a large number of x-rays conducted by Air Force doctors[17] or knows that she has a debilitating disease but does not have any evidence that the condition is the result of exposure to nerve gas emitted by an Army testing facility.[18]  In those cases, the plaintiffs speculated for some time that their injuries were caused by the Government, and their FTCA claims did not accrue until

---

[17]     This was the factual basis of the claim asserted in *Harrison v. United States*, 708 F.2d at 1027, a case relied upon by Trinity in its briefing.

[18]     This was the factual basis of the claim asserted in *Bayless v. United States*, No. 12-4120, 2014 WL 1663082 (10th Cir. Apr. 28, 2014), another case relied upon by Trinity in its briefing.

there was factual evidence of a causal link. But Trinity did not merely suspect or speculate that its alleged injury was caused by the Government; it knew that its damages were the result of the Government's charging it with a crime and prosecuting the criminal charges.

The federal-law test for accrual of an FTCA claim did not require Trinity to have knowledge of facts supporting a conclusion that the government's prosecution rested on the intentional misconduct of Agent Phillips. Instead, if Trinity had asserted a timely malicious prosecution claim, the burden would have shifted to the Government to prove that it acted with probable cause and without malice in conducting the criminal proceeding.

Trinity argues that the undersigned "implied" in the original report and recommendation that the burden-shifting principles of Louisiana's malicious prosecution law "somehow caused Trinity's claim to accrue when the United States voluntarily dismissed the prosecution." (Rec. Doc. 48 at 27). That is incorrect. Again, Trinity is confusing the elements for the malicious prosecution cause of action with the elements for accrual. The original report and recommendation does not, despite Trinity's protestations, suggest that the state-law presumptions of probable cause and malice supplant federal law with regard to the standard for accrual of an FTCA claim. The original report and recommendation explained the state-law

standard for a malicious prosecution claim and the federal-law standard for accrual of that claim under the FTCA and concluded that Trinity had a cause of action that accrued more than two years before it filed this lawsuit. When the criminal prosecution ended in September 2003, Trinity had more than enough information to lead it to, at a minimum, investigate further. But Trinity waited eight years before asserting its claim. The claim was too late, and this lawsuit should be dismissed.

## II. DOES JUDICIAL ESTOPPEL PREVENT THE GOVERNMENT FROM ASSERTING THE UNTIMELINESS OF TRINITY'S CLAIM?

Judicial estoppel is an equitable doctrine that prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same proceeding or an earlier one.[19] The doctrine protects the integrity of the judicial process by preventing litigants from "playing fast and loose with the courts"[20] and thereby reduces the "risk of inconsistent court determinations."[21] It also "prohibits parties from deliberately changing positions based upon the exigencies of the

---

[19] *United States v. Renda*, 709 F.3d 472, 486-87 (5th Cir. 2013); *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003); *Ergo Science, Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir.1996).

[20] *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993).

[21] *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001).

moment."[22] Two requirements are generally necessary in order for the doctrine to be invoked: (1) the party's new position must be clearly inconsistent with its previous one, and (2) the previous court must have accepted the party's earlier position.[23] "Because the doctrine is equitable in nature, it should be applied flexibly. . . ."[24]

Trinity argues that the Government is estopped from taking the position, in this lawsuit, that all essential facts justifying a malicious prosecution claim existed and should have been known by all interested parties at the time the criminal charges were dismissed because it contended, in the Vidrine lawsuit, that Mr. Vidrine could not prove facts supporting his malicious prosecution claim. (Rec. Doc. 48 at 17). Trinity generally cites to three documents for the alleged contentions of the Government in the earlier case but neither quotes the contentions nor identifies the pages in the cited documents on which the contentions might be found. The undersigned's perusal of the cited documents[25] reveals that, in each, Trinity argued that there was a lack of

---

[22] *United States v. McCaskey*, 9 F.3d at 378.

[23] *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d at 396; *New Hampshire v. Maine*, 532 U.S. at 750-51.

[24] *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011), quoting 18 James Wm. Moore et al., Moore's Federal Practice § 134.31 at 73 (3d ed. 2011).

[25] One of the cited documents is a table of contents. (Rec. Doc. 195-1 in Civil Action No. 6:07-cv-01204). The undersigned assumes that Trinity actually meant to direct the Court's attention to Rec. Doc. 105-2, which is a memorandum in support of a motion for summary judgment.

evidence to support the probable cause and malice elements of Mr. Vidrine's malicious prosecution claims.

Trinity cites to the Government's brief responding to Trinity's objections to the original report and recommendation to support its argument that an inconsistent position has been taken in this case. In the cited passages, the Government said: "All of the facts necessary to assert a claim were known to all parties in 2003" (Rec. Doc. 51 at 6) and "the facts that were known at the time of the dismissal of the criminal charges provided ample evidence of essential facts which would support the possible existence of a claim for malicious prosecution." (Rec. Doc. 51 at 10 – internal quotation marks omitted). Similarly, the Government has argued, in support of its motion to dismiss for lack of jurisdiction, that "[a]t the time of the 2003 dismissal, Trinity Marine had a viable claim as to all of the elements of a malicious prosecution case under Louisiana law." (Rec. Doc. 28 at 14).

Trinity argues that, in making these statements, "the United States has reversed course – contending [that] at the moment the criminal prosecution was dismissed (and there-afterwards), all essential facts justifying a malicious prosecution claim both existed, and should have been known by all interested parties." (Rec. Doc. 48 at 17). But contending that a party has a viable claim is not inconsistent with contending that

a party cannot prove the elements of that claim. It is not unusual for a party to survive a Fed. R. Civ. P. 12(b)(6) challenge only to lose on summary judgment.

In making its judicial estoppel argument, Trinity seems to be confusing the Government's position with regard to the merits of the Vidrine claim with the Government's position concerning the accrual of Trinity's claim. Trinity fails to recognize the difference between the facts necessary to establish that a claim has accrued under the FTCA, the facts necessary to establish that a state-law malicious prosecution claim exists, and the facts necessary to prevail on a state-law malicious prosecution claim. Trinity says: "The United States opposed Mr. Vidrine's motion by parroting its affirmative arguments challenging Mr. Vidrine's ability to state sufficient facts and contesting all facts regarding essential criteria for Mr. Vidrine's claim." (Rec. Doc. 48 at 20). Trinity then says: "The United States should not now be allowed to contend 'facts' regarding these very same considerations all along should have been evident to Trinity – after clearly denying there were any such facts." (Rec. Doc. 48 at 21). But, in the first instance, the facts referred to went to the merits of the malicious prosecution claim while, in the second instance, the facts referred to concern whether the claim exists or has accrued. The Government is not arguing in this case that Trinity knew as a matter of fact when the criminal charges were dismissed that Agent Phillips acted with malice; it is arguing that Trinity knew that

it was injured and that its injury was caused by the Government, as explained in the preceding section of this report. Therefore, these are not two inconsistent positions, and Trinity cannot satisfy the fundamental criterion for judicial estoppel. Trinity cannot show that the Government is now taking a position adverse to or inconsistent with a position taken by the Government in the Vidrine case.

With regard to the second criterion for judicial estoppel, Trinity argues, first, that the trial court judge accepted the Government's position in the Vidrine case and, second, that acceptance need not be established because the jurisprudence did not create a firm requirement for acceptance. Trinity points to two failed motions for summary judgment and a failed motion to dismiss for lack of subject-matter jurisdiction as the source of the Government's contentions in the Vidrine case. Since the Vidrine court did not rule in the Government's favor on any of those motions, that court rejected – and therefore did not accept – the Government's position. It is not logical for Trinity to admit that the Vidrine court ruled against the Government but to also argue that the court accepted the Government's position. Therefore, Trinity cannot establish the second prong of the judicial estoppel analysis.

Ultimately, whether to apply judicial estoppel is discretionary,[26] and Trinity's argument that acceptance by the prior court of the Government's prior position is not necessary must be interpreted as a plea for this Court to find that equity – and nothing more – requires that the Government be precluded from asserting its argument that Trinity's complaint is not timely. However, Trinity has not persuaded the undersigned that it would be appropriate for the Court to exercise its discretion and apply judicial estoppel in this case. The undersigned concludes that Trinity's argument with regard to judicial estoppel lacks merit.

## CONCLUSION

The undersigned finds that Trinity is not entitled to judicial estoppel, that its malicious prosecution claim accrued more than two years before its administrative claim was filed, and that this Court lacks subject-matter jurisdiction over Trinity's complaint. For these reasons, the undersigned again recommends that the government's motion to dismiss (Rec. Doc. 27) should be granted.

---

[26] *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999); *In re Flugence*, 738 F.3d 126, 128 (5th Cir. 2013); *New Hampshire v. Maine*, 532 U.S. at 750.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, on June 2nd, 2014.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE